# MICHAEL LEE LOSCOMB *v.* STATE OF MARYLAND

[No. 448, September Term, 1979.]

*Decided May 19, 1980.*

The cause was argued before GILBERT, C. J., and MORTON and MACDANIEL, JJ.

*Broughton M. Earnest* for appellant.

*Bonnie A. Travieso, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Sidney S. Campen, Jr., State's Attorney for Talbot County,* and *Jane Tolar O'Connor, Assistant State's Attorney for Talbot County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

## —PREFACE—

This case was argued before the Court on December 10, 1979. We issued an opinion on January 10, 1980. Appellant filed a motion for reconsideration. We granted that motion and recalled the opinion as filed on January 10, 1980. As a result of our reconsideration, we modify our original opinion.

## —THE LAW—

Whenever an operator of a motor vehicle is believed, while "intoxicated," [1] to have caused the death of another person as a result of the manner in which he or she drove his or her

---

1. If the operator is charged under Md. Ann. Code art. 27, § 388A, the word "intoxicated" means: "If there was in . . . [the accused's] blood at the time of testing 0.15 percent, or more, by weight, of alcohol, as determined by an analysis of his blood or breath, it shall be prima facie evidence that the defendant was intoxicated." Md. Courts and Judicial Proceedings Code Ann. (1974) § 10-307 (e).

motor vehicle, the operator is subject to being charged with either or both of two distinct violations of the Criminal Law.

Md. Ann. Code art. 27, § 388 provides:

"Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle,' and the person so convicted shall be sentenced to jail or the house of correction for not more than three years, or be fined not more than $1,000.00 or be both fined and imprisoned.

In any indictment or warrant for manslaughter by automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle, it shall not be necessary to set forth the manner and means of death. It shall be sufficient to use a formula substantially to the following effect: 'That A-B on the . . . . . . . day of . . . . . . . ., nineteen hundred and . . . . . . . . at the County (City) aforesaid, unlawfully, in a grossly negligent manner did kill and slay C-D.' " [2]

Cognizant of the degree of difficulty confronting State's Attorneys' efforts to prove "gross negligence" in order to establish guilt under section 388,[3] the Legislature enacted a new substantive offense that contained many of the elements of manslaughter by motor vehicle, but added the additional factor of "intoxication," and reduced the "gross

2. A violation of section 388 is a misdemeanor, separate and distinct from the common law crime of manslaughter. Connor v. State, 225 Md. 543, 171 A.2d 699, cert. denied, 368 U.S. 906 (1961).

3. See e.g., Connor v. State, supra; Lilly v. State, 212 Md. 436, 129 A.2d 839 (1957); Faulcon v. State, 211 Md. 249, 126 A.2d 858 (1956); Thomas v. State, 206 Md. 49, 109 A.2d 909 (1954); Blackwell v. State, 34 Md. App. 547, 369 A.2d 153, cert. denied, 280 Md. 728, 735 (1977); Boyd v. State, 22 Md. App. 539, 323 A.2d 684, cert. denied, 272 Md. 738 (1974); State v. Gibson, 4 Md. App. 236, 242 A.2d 575 (1968), aff'd, 254 Md. 399 (1969).

negligence" standard of section 388 to "negligence." Md. Ann. Code art. 27, § 388A.

The title to Laws 1978, ch. 454, declares that:

> "FOR the purpose of providing that any person causing the death of another as the result of his negligent driving, operation or control of a motor vehicle *while intoxicated* is guilty of a misdemeanor; specifying a name for the misdemeanor; setting the penalties for the misdemeanor; specifying that an indictment for the crime need not contain certain information; providing a form for the indictment; [and] defining intoxicated as it relates to this crime...." (Emphasis supplied.)

Immediately thereafter, the crime of "Homicide by motor vehicle while intoxicated," section 388A was added to Article 27 of the Maryland Code. Section 388A provides in pertinent part:

> "(a) In this section 'intoxicated' has the same meaning as indicated in and is subject to the same presumptions and evidentiary rules of § 10-307 of the Courts Article regarding intoxication under the vehicle laws of this State.
>
> (b) Any person causing the death of another as the result of his negligent driving, operation or control of a motor vehicle while intoxicated is guilty of a misdemeanor to be known as 'homicide by motor vehicle while intoxicated,' and the person so convicted shall be punished by imprisonment for not more than two years, or by fine of not more than $1,000 or both fine and imprisonment.
>
> In any indictment, information, or warrant for homicide by motor vehicle while intoxicated, it is not necessary to set forth the manner and means of death.
>
> (c) It shall be sufficient to use a formula substantially to the following effect: 'That A-B on

the . . . . . . . day of . . . . . . . nineteen hundred and
. . . . . . . at the County (City) aforesaid, unlawfully,
while intoxicated did kill C-D, against the peace,
government, and dignity of the State.' " [4]

A critical part of any prosecution under section 388A is the
establishment by the State of the fact that the accused was
intoxicated within the meaning "of § 10-307 of the Courts
Article." Consequently, when the State endeavors to prove a
charge of "Homicide by motor vehicle while intoxicated" it
must rely upon Md. Cts. & Jud. Proc. Code Ann. (1974)
§ 10-307, in order to demonstrate to the trier of fact that the
accused was intoxicated. Courts Art. § 10-307 provides:

"(a) *In general.* — In a proceeding in which a
person is charged with a violation of § 388A of
Article 27 [5] or with driving or attempting to drive
a vehicle in violation of § 21-902 of the
Transportation Article,[6] *the amount of alcohol in
the person's breath or blood shown in chemical
analysis as provided in this subtitle is admissible in
evidence and has the effect set forth in subsections
(b) through (e) of this section.*

(b) *No intoxication presumed.* — If there was in
his blood at the time of testing 0.05 percent or less,
by weight, of alcohol, as determined by an analysis
of his blood or breath, it shall be presumed that the
defendant was not intoxicated and that his driving
ability was not impaired by the consumption of
alcohol.

(c) *No presumption.* — If there was in his blood at
the time of testing more than 0.05 percent, but less

4. Section 388A became effective July 1, 1978.
5. The words, "with a violation of § 388A of Article 27 or" were added to
section 10-307 (a) when section 388A of the Criminal Code was enacted. *See*
Laws 1978, ch. 454.
6. Md. Transportation Code Ann. § 21-902 is concerned with operating
a vehicle while intoxicated, while driving ability is impaired by alcohol,
while under the influence of alcohol or drugs or both, and driving while
under the influence of any of the controlled dangerous substances
enumerated in Md. Ann. Code art. 27, § 279.

than 0.10 percent, by weight, of alcohol, as determined by an analysis of his blood or breath, this fact may not give rise to any presumption that the defendant was or was not intoxicated or that his driving ability was or was not impaired by the consumption of alcohol, but this fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.

(d) *Prima facie evidence of impairment.* — If there was in his blood at the time of testing 0.10 percent, or more, by weight, of alcohol, as determined by an analysis of his blood or breath, it shall be prima facie evidence that the defendant's driving ability was impaired by the consumption of alcohol.

(e) *Prima facie evidence of intoxication.* — If there was in his blood at the time of testing 0.15 percent, or more, by weight, of alcohol, as determined by an analysis of his blood or breath, it shall be prima facie evidence that the defendant was intoxicated." (Emphasis supplied.)

The General Assembly did not expressly amend Courts Art. § 10-302 which provides:

"In a prosecution for a violation of *a law* concerning a person who is driving or attempting to drive a vehicle in violation of § 21-902 of the Transportation Article, a chemical test of his breath or blood may be administered to the person for the purpose of determining the alcoholic content of his blood." (Emphasis supplied.)

The net effect of section 10-302, however, is to permit a chemical test whenever there is a violation of any law that involves driving while intoxicated or impaired. Even if such were not the situation, it is patent that the chemical test may be administered to a person charged with a violation of section 388A because in order to violate that section of the criminal code, a violation of Transportation Art. § 21-902 must also occur. Stated more simply, to be guilty of

"Homicide by motor vehicle while intoxicated" requires, of necessity, that the operator of the vehicle be intoxicated within the scope of Transportation Art. § 21-902.

An integral part of the legislative scheme to detect and punish the operator of a motor vehicle while intoxicated [7] is that the person accused of violating Transportation Art. § 21-902 or Md. Ann. Code art. 27, § 388A, is not *compelled* to submit to a chemical analysis, notwithstanding that he or she signed a statement of consent as a prerequisite to obtaining a driver's license, or renewal thereof, to submit to a chemical test of his or her blood or breath if he or she is " 'detained on suspicion of driving or attempting to drive ... while intoxicated or ... impaired by consumption of alcohol.' " Transportation Art. § 16-205.1 (a) (1).[8]

Courts Art. § 10-309 provides:

> "(a) *Test not compulsory.* — A person may not be compelled to submit to a chemical analysis provided for in this subtitle. Evidence of chemical analysis is not admissible if obtained contrary to its provisions. No inference or presumption concerning either guilt or innocence arises because of refusal to submit. The fact of refusal to submit is not admissible in evidence at the trial.
>
> (b) *Consequences of refusal.* — This subsection does not limit the provisions of the vehicle laws regarding the consequences of refusal to submit to a chemical test or tests."

The predecessor to Courts Art. § 10-309 was interpreted by the Court of Appeals in *Mauldin v. State,* 239 Md. 592, 212 A.2d 502 (1965). In that case, the Court observed that former Md. Ann. Code art. 35 (Evidence), § 100 (c) provided that " 'no person shall be compelled to submit himself * * * for the purpose of chemical analysis * * * and no inference * * * concerning his guilt or innocence arises by reason of his re-

---

**7.** *See* Courts Art. §§ 10-302 through 10-309.
**8.** Non-resident drivers are deemed to have consented to the chemical test by virtue of their driving a motor vehicle on the highways or private property within this State. Transportation Art. § 16-205.1 (b).

fusal to submit * * *.' " The Court went on to state that "the failure to affirmatively or validly agree to . . . [the chemical analysis] does not bar the presentation of its results into evidence." Mauldin argued that even though he had been advised of his rights, Md. Ann. Code art. 35, § 100 (g), and had consented to the test, his intoxicated state negated the consent. The Court disagreed. Although in *Mauldin* the Court did not expressly incorporate then Article 35, § 100 (g) into Md. Ann. Code art. 27, § 388, they at least required its application. We do not read *Mauldin* as holding that the detained person need not be advised of his right to select the type of test, if any, to which he will submit for purposes of analysis, nor do we read it as sanctioning any type of trickery so as to obtain from the detained person a blood or breath sampling for analysis.

Effective July 1, 1969, Md. Ann. Code art. 66½, § 92A was enacted by Laws 1969, ch. 158. Section 92A was subsequently redesignated as section 6-205.1 [9] and now appears as Transportation Art. § 16-205.1. Former section 92A provided in pertinent part:

"(c) It shall be the duty of any police officer who stops or detains any person who he has reasonable grounds to believe is or has been operating or attempting to operate a motor vehicle under the influence of alcohol, or who is or has been operating or attempting to operate a motor vehicle while his ability was impaired by the consumption of alcohol to do all the following things:

1. Detain such person.

2. Request that he take a chemical test or tests of his blood, breath or urine, for the purpose of determining the alcoholic content of his blood, to be administered by a person examined and certified as sufficiently equipped and trained to administer such tests by the Department of Maryland State Police, which is authorized to promulgate rules and regulations for the examination and certification, if

---

**9.** Article 66½, § 92A became Article 66½, § 6-205.1 with the enactment of Laws 1970, ch. 534.

detained by a member of the Department of Maryland State Police or by a member of a local police agency which has a member examined and certified to administer the tests.

3. Advise the person of the administrative penalties that may be imposed for such refusal.

4. File with the Department of Motor Vehicles within 48 hours after such detention, a sworn report that he had reasonable grounds to believe that said person had been operating or attempting to operate a motor vehicle upon the highways of this State while under the influence of alcohol, or that said person operated or attempted to operate a motor vehicle upon the highways of this State, while his ability was impaired by the consumption of alcohol and that said person refused to take the chemical test for alcohol, upon the request of the police officer and after having been informed of the administrative penalties that may be imposed for said refusal." [10]

The current statute, Transportation Art. 16-205.1 (c) mandates:

"*Duty of police officer on stopping or detaining suspected person.* — If a police officer stops or detains any individual who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while intoxicated or while his driving ability is impaired by the consumption of alcohol, the police officer shall:

(1) Detain the individual;

(2) Request that the individual permit a chemical test to be taken of his blood or breath to determine the alcoholic content of his blood;

---

**10.** At the time *Mauldin* was decided, Article 35, § 100(g) required only that the police officer advise the motorist that he might, but need not submit to the chemical analysis. That subsection of section 100 was deleted by Laws 1969, ch. 157.

(3) Advise the individual of the administrative penalties that may be imposed for refusal to take the test;

(4) If the individual is licensed under this title, furnish him with a copy of the statement set forth in subsection (a) of this section and inform the individual that he signed this statement when applying for a license; and

(5) If the individual refuses to take the test, file with the Administration, within 48 hours after detention, a sworn report that:

(i) The officer had reasonable grounds to believe that the individual had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while intoxicated or while his driving ability was impaired by the consumption of alcohol; and

(ii) The individual refused to take the chemical test for alcohol when requested by the police officer and after being informed of the administrative penalties that may be imposed for refusal." [11]

Although an isolated reading of that code section would limit its application only to the offenses of "driving or attempting to drive a motor vehicle while intoxicated or . . . driving ability is impaired by consumption of alcohol," we discern that the legislative intent is clear that the dictates of the statute are not so confined. In the title to Laws 1969, ch. 158, the General Assembly stated:

"AN ACT to add new Section 92A to Article 66½ of the Annotated Code of Maryland (1967 Replacement Volume, 1968 Cumulative Supplement), title 'Motor Vehicles,' subtitle 'Administration-Registration-Titling,' to follow im-

---

11. The substance of Transportation Art. § 16-205.1 and its ancestor, Md. Ann. Code art. 66½, § 92A is the same. Stylistic changes have, however, in the intervening years, occurred.

mediately after Section 92 thereof; and to add new Section 104A to the same Article to follow immediately after Section 104 thereof; and to repeal Section 206 of the same Article, subtitle 'Operating Vehicles upon Highways,' and to enact new Section 206 to stand in the place and stead of the Section so repealed; to provide as a condition to obtaining or renewing a motor vehicle driver's license, the applicant shall expressly consent to the taking of a chemical test of his blood, breath, or urine, and to provide that the operation or attempted operation of a motor vehicle on the public highways of this State by a validly licensed non-resident motor vehicle operator implies the consent of the operator to the taking of a chemical test of his blood, breath, or urine, if either the resident or non-resident motor vehicle operator is detained by the Maryland State Police or by certain qualified members of local police agencies, and the test is to be given by persons certified and qualified *for any offense alleged to have been committed while operating a motor vehicle in an intoxicated condition or operating while his driving ability is impaired by the consumption of alcohol,* relating to the presumption arising from a refusal to take a chemical test, and to the revocation, suspension or refusal of licensing, providing for hearing and appeal from suspension or refusal of licensing, and to notify other states in such cases, and relating generally to the licensing of motor vehicle operators and the operation of motor vehicles in this State." (Emphasis supplied.)

The Legislature apparently meant that Transportation Art. § 16-205.1 (c) should be applied in all instances in which the operation of a motor vehicle in an intoxicated or impaired condition constitutes an *element* of an offense.

In the preceding chapter of Laws 1969, *i.e.,* Ch. 157, the Legislature enacted then Article 35, § 100 (a). That section provided in pertinent part:

"(a) *In any criminal prosecution for a violation of Section 206 of* Article 66½ of this Code (1957 Edition, as amended from time to time) *or for a violation of any other law of this State concerning a person who is under the influence of intoxicating liquor driving or attempting to drive any vehicle as specified in the other laws,* the person may be given a chemical test of his breath, blood or urine or other bodily substance for the purpose of determining the alcoholic content of his blood; provided, that the specimen of blood, breath or urine must have been taken within two hours after the person being prosecuted was first apprehended by the arresting officer; and that the test is administered by qualified personnel with equipment approved by the toxicologist of the office of the chief medical examiner of the Department of Post-Mortem Examiners at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor or while his ability is impaired by the consumption of intoxicating liquor." (Emphasis supplied.)

Subsection (c) of section 100 provided:

"(c) No person shall be compelled to submit himself or any part of his body or bodily substance for the purpose of a chemical analysis provided for in this section and evidence of chemical analysis shall not be deemed admissible if obtained contrary to the provisions of this section; and no inference or presumption concerning either his guilt or

innocence arises by reason of his refusal to submit as hereinbefore set forth, nor shall the fact of his refusal so to submit be admissible into evidence at his trial. This subsection in no way limits the provisions of section 92A of Article 66½ of this Code regarding the consequences of refusal to submit to a chemical test or tests.[12] In any event, the defendant shall have the right to select the type of test administered, and if facilities or equipment are not available for such test then none shall be given, and this fact shall not create any inference or presumption concerning either his guilt or innocence by reason of his inability to take a test, nor shall the fact of his inability to take such a test be admissible in evidence at his trial, nor shall this fact be considered a refusal to take a test under section 92A of this article."

The right to select the type of test, blood or breath, is presently conferred on a defendant by Courts Art. § 10-305. That section provides:

"The defendant may select the type of test administered, and if facilities or equipment are not available for that test then none may be given, and this fact does not create an inference or presumption concerning either his guilt or innocence by reason of his inability to take a test. The fact of his inability to take a test is not admissible in evidence at his trial, and this fact may not be considered a refusal to take a test under the vehicle laws." [13]

The various statutory provisions, *i.e.,* Courts Art. § 10-302, § 10-305, § 10-307, § 10-309, Transportation Art.

---

**12.** Referring to the administrative sanction that may be imposed by the Motor Vehicle Administration.

**13.** Thus, where the elected type of test is not available, no sanction may be imposed by M.V.A. for failure to submit to a test.

§ 16-205.1 and § 21-902, and the Criminal Code, Article 27, § 388 and § 388A must be read together. When so read, it becomes clear that a police officer who detains an operator of a motor vehicle on the basis that the operator was driving or attempting to drive while intoxicated or impaired as a result of the consumption of alcohol, or any allied offenses must offer the detained individual a choice of a blood test or a breath test, or no test at all. The arresting officer may not direct that blood be drawn from the suspect for the purpose of having it tested for alcoholic content. If an officer is permitted to order such a test, over the person's objections, or order it obtained by some subterfuge, and use the results at trial, the statutory right of the individual to select the type of test, if any, to which he will submit, is rendered absolutely meaningless.[14]

Legislatures are, like all other democratic organizations, subject to criticism. Neither they nor the courts are infallible. Nevertheless, they would not so meticulously erect a redoubt around a person who is charged with the lesser offenses of "Homicide by motor vehicle while intoxicated,"[15] or "Operating a motor vehicle while intoxicated,"[16] or "Driving while ability is impaired by alcohol,"[17] and yet not afford any of those protections to a motorist accused of the more serious offense, "Manslaughter by motor vehicle."[18]

Any chemical analysis otherwise obtained by the detaining officer shall not be admissible into evidence unless it is first demonstrated to the trier of fact that the accused was advised of his right to elect the type of test, if any, to which he would submit, and the test given, if any, was in accordance with that election.

---

**14.** There is no constitutional right to object to the drawing of blood for the purpose of having it tested, by the police, for evidence of intoxication or impairment. *See* Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

**15.** Md. Ann. Code art. 27, § 388A.

**16.** Transportation Art. § 21-902 (a).

**17.** Transportation Art. § 21-902 (b).

**18.** Md. Ann. Code art. 27, § 388.

To avoid future difficulty surrounding either a blood or breath test, irrespective of whether the charge be laid under Article 27, § 388 or 388A, or under the Transportation Article, the better practice for the detaining officer to follow is:

1) request the person to submit to a chemical test to determine the alcoholic content of that person's blood;

2) if the person is a licensed Maryland operator, furnish a copy of the consent form that is required of all Maryland licensed operators;

3) inform the person of his or her right to elect whether to submit to a breath test or a blood test or to refuse to submit to either;

4) advise the person that if he or she elects to submit to a chemical test that he or she has the privilege of choosing a physician to administer the test, but the physician is in addition to the physician designated by the officer;

5) inform the person detained that if he or she refuses to submit to a chemical test, no inference or presumption concerning guilt or innocence arises because of the refusal;

6) apprise the person that the results of a chemical test give rise to the presumptions specified in Courts Art. § 10-307;

7) advise the person that he or she is subject to *administrative* penalties for failure to submit to the test.

We think that the blood-breath test that is articulated in Courts Art. § 10-307, along with Transportation Art. § 16-205.1 (c) is as much a part of Article 27, § 388 as it is Article 27, § 388A, if and when the basis of the charge under section 388 is that the accused was intoxicated. We hold, therefore, that whenever a person is charged under Md. Ann. Code art. 27, § 388 (Manslaughter by motor vehicle), and the basis of the charge is the alleged intoxication of the accused while operating a motor vehicle, no evidence derived

from any chemical analysis administered or caused to be administered by the police, is admissible in evidence unless there has been compliance with Courts Art. § 10-305. The burden, of course, is on the State to satisfy the court that compliance has occurred.

Having resolved the knotty issue of the application of the blood-breath test to prosecutions under Md. Ann. Code art. 27, §§ 388 and 388A, we now turn our attention to the argument of the appellant that the enactment of section 388A implicitly repealed section 388.

The effect of section 388A is, in our view, to create a wholly new substantive crime that requires an element of proof not necessary to a successful prosecution under section 388. The "Homicide by motor vehicle while intoxicated" necessitates a showing that the defendant was intoxicated within the meaning of Courts Art. § 10-307. Indeed, the purpose behind the enacting of the "Homicide by motor vehicle while intoxicated" proviso was to enhance the State's chances of obtaining convictions of motorists who not only drive while intoxicated but kill innocent third parties as a result of the imbiber's negligence.

On the other hand, section 388 does not necessitate proof of intoxication. Indeed, "gross negligence" is the standard required, and one need not be intoxicated to be grossly negligent.

Lastly, we observe that a defendant who is accused under Md. Ann. Code art. 27, § 388 (Manslaughter by motor vehicle) and § 388A (Homicide by motor vehicle while intoxicated) of the homicide of another person, cannot be convicted of both offenses since it is manifestly impossible to kill or slay one person twice. *Blackwell v. State, supra.* Moreover, even though the elements of the two offenses, section 388 and section 388A, vary so that proof of one is not necessarily proof of the other, *Thomas v. State,* 277 Md. 257, 353 A.2d 240 (1976), *rev'g* 26 Md. App. 232, 337 A.2d 137 (1975), conviction of both charges, arising from the slaying of the same person amounts to piling punishment upon punishment. Fundamental fairness precludes such a practice.

*—THE INSTANT CASE—*

A tragedy occurred on July 17, 1978, in Talbot County, Maryland, at the intersection of Md. Route 322 (Easton by-pass) and Glebe Road. The tragedy was the result of a two-vehicle collision. The occupants of one automobile were both killed by the impact.

When Officer Gary W. Roth of the Easton Police Department arrived at the scene of the collision, he checked a "female who was lying on her back in the intersection. . . ." He was unable to detect any signs of life in the person. Officer Roth was then advised that another female "was [in the front seat of one of the cars], pinned in the wreckage, slumped over in a forward crouched . . . position. He was "unable to find any signs of life on her either."

Roth further testified that he was "directed to a third victim," the appellant, Michael L. Loscomb, who was "laying [*sic*] by the curb on the grass. He was lying on his right side." The officer noticed no "external injuries" to Loscomb, but the appellant "was groaning, apparently in pain." Officer Roth did not "notice any odor of alcoholic beverage on . . . [appellant's] breath." Loscomb was transported by ambulance to the Easton Memorial Hospital.

Roth continued his investigation at the scene. He found a "large styrofoam cooler in the left rear seat" of the appellant's Cadillac. The cooler contained "a large glass mug" which was "wet." What caused the wetness was unknown to the officer. The cooler did not have a top to it. In addition, Officer Roth found "two bottles, alcohol bottles . . . in the Cadillac, one empty, and one half full. One of the bottles was underneath the brake pedal of the car." The officer was unable to say which of the two bottles was under the pedal. He did, however, state that "[b]oth bottles had caps on them." The empty bottle bore a label indicating that it had contained blackberry brandy. The other bottle was that of Lord Calvert Whiskey. `

After Loscomb had been removed to the hospital, Roth endeavored to reach the Chief of Police and "request . . . [him to] attempt to obtain a blood test for alcohol from . . .

Loscomb...." Roth believed that the blood test was appropriate in view of "the whiskey bottles in the car" of appellant, the double fatal accident, the point of impact, and his feeling that Loscomb was responsible for the collision.

Unable to contact the chief, he radioed the police department and asked them to request the chief to "attempt to obtain a blood test for alcohol from" the appellant.

Later, Roth went to the hospital where he met Chief Cosier. They went "directly into the examination room where ... Loscomb was lying on one of the ... tables. ... And they were preparing to draw the blood." Loscomb was conscious and quipped, "What is this, truth serum?" Two vials of blood were drawn from Loscomb by a physician at the hospital.[19]

Roth informed appellant that the occupants of the other car were dead. At that point, Loscomb said that he wanted to talk to his attorney. Roth then asked the Chief if a consent form had been obtained from Loscomb, and the Chief replied that it had not. Roth explained to Loscomb "what had happened with the blood," and requested that Loscomb "sign the consent form." Appellant refused to do so.

On the night of July 17, 1978, appellant received three citations for violations of the motor vehicle laws: driving while intoxicated, impaired or under the influence, Transportation Art. § 21-902;[20] reckless and negligent driving, Transportation Art. § 21-901.1; and failure to drive within a single lane, Transportation Art. § 21-309 (b). One week later, Loscomb was charged with manslaughter by motor vehicle and homicide by motor vehicle while intoxicated. Both charges were levied against Loscomb as to each of the two persons who perished in the collision.

A motion to suppress the blood test was denied by the hearing judge on the ground that the blood test applied only to operating under the influence cases and not to the manslaughter offenses. Hence, the court ruled that the blood

---

**19.** The blood test showed an 0.18 percent ethyl alcohol in Loscomb's blood. *See* Courts Art. § 10-307 (e).

**20.** The State, on December 13, 1978, entered a *nol pros* as to the traffic offense of driving while intoxicated, impaired, or under the influence. The appellant was so notified.

test obtained without advising the appellant of his rights was admissible in a trial for automobile manslaughter or homicide by motor vehicle while intoxicated.

At a non-jury trial in the Circuit Court for Talbot County, the results of the blood test were allowed into evidence over the objection of appellant's counsel. Loscomb was convicted of all offenses for which he stood trial except the reckless or negligent driving violation that the trial judge held to have merged "into the other more serious counts."

From our earlier discussion of the law, it is at once apparent that the blood test should not have been admitted into evidence. Its admission constitutes reversible error. Moreover, inasmuch as no person may be slain twice, it was impossible for the appellant to be guilty of both manslaughter by motor vehicle and homicide by motor vehicle while intoxicated, of each of the victims. We think that point to be so obvious as not to need further comment.

We reverse and remand the case for a new trial on the two manslaughter by motor vehicle offenses, Md. Ann. Code art. 27, § 388 and the two homicide by motor vehicle while intoxicated charges, Md. Ann. Code art. 27, § 388A.

We affirm, however, the judgment of the circuit court with respect to the traffic charge of failing to drive in a single lane, an offense for which the court imposed a fine of $500.[21] Suffice it to say, without recounting all the evidence, that there was ample evidence from which the court could have concluded that appellant was not operating his vehicle in the proper lane.

> *Judgments on convictions for violation of Md. Ann. Code art. 27, § 388 and § 388A reversed and remanded for a new trial.*
> *Judgment on conviction for violating Transportation Art. § 21-309 (b) affirmed.*
> *One-third costs to be paid by appellant.*
> *Two-thirds by Talbot County.*

---

**21.** *See* Transportation Art. § 27-101 (b).