467 A.2d 544

**Ronald JOHNSON**

v.

**STATE of Maryland.**

**No. 1872, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Nov. 3, 1983.

Certiorari Denied April 2, 1984.

206

208

David P. Sutton, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland, on brief, for appellant.

Jane E. Pilliod, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, Kurt L. Schmoke, State's Atty., for Baltimore City and Larry Litt, Asst. State's Atty. for Baltimore City, on brief, for appellee.

Submitted before MOYLAN, ADKINS and BLOOM, JJ.

ADKINS, Judge.

On October 29, 1981, Osborne Holland was the recipient of both good and bad news. The good news was in the form of a $900 winning lottery ticket that he had cashed in that morning. The bad, almost tragic, news was conveyed to him that afternoon, when a man entered the laundromat which Holland managed, and announced: "This is a stickup. Give me your money, old man." As Holland was reaching for the money, the intruder shot him four times and fled the scene. The entire incident lasted only a few seconds. Fortunately, Holland survived.

In due course, appellant Ronald "Twins" Johnson was charged as a result of this incident. So far as is pertinent to this appeal, he was accused in one indictment of attempted robbery with a dangerous or deadly weapon (Art. 27, § 488), assault with intent to rob (Art. 27, § 12), common law assault, and use of a handgun in the commission of a crime of violence (Art. 27, § 36B(d)). In a second indictment he was accused of assault with intent to murder (Art. 27, § 12), common law assault, and use of a handgun in a crime of violence (Art. 27, § 36B(d)).

A jury sitting in what is now the Circuit Court for Baltimore City (Karwacki, J. presiding) convicted Johnson of attempted armed robbery, assault with intent to murder, and the two handgun violations. Judge Karwacki sentenced him to imprisonment for twenty years on the first conviction, thirty years on the second, and fifteen years on each

handgun conviction, all to run consecutively, for a total of eighty years.

On appeal, Johnson presents six questions which we shall consider in the following order, discussing additional facts as necessary:

1. Was appellant improperly convicted and sentenced for both assault with intent to murder and attempted armed robbery?

2. Did appellant's separate convictions and sentences for two simultaneously occurring handgun use offenses constitute impermissible double punishment?

3. Did the trial court erroneously refuse to suppress appellant's in-court identification?

4. Was the evidence sufficient to sustain appellant's convictions?

5. Did the trial court err prejudicially in instructing the jury that the testimony of a single eyewitness was sufficient to sustain appellant's convictions?

6. Was appellant denied due process of law as a result of the State's suppression of material evidence favorable to his case?

### Convictions and Sentences for Both Assault with Intent to Murder and Attempted Armed Robbery

Johnson's contentions on this issue are two-fold. First, he says that under the required evidence test, *Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979), his convictions of assault with intent to murder and attempted armed robbery should merge. Second, he claims that where "an assault is committed in furtherance of, and incidental to, an attempted robbery, the Legislature did not intend that separate sentences be imposed for both attempted armed robbery and assault with intent to murder." This is so, he argues, because the imposition of separate and consecutive sentences for these two convictions amounts to "piling punishment upon punishment" and is prohibited by "[f]undamental fairness...."

*Loscomb v. State,* 45 Md.App. 598, 613, 416 A.2d 1276 (1980); *aff'd. sub nom. State v. Loscomb,* 291 Md. 424, 435 A.2d 764 (1982).

■ On the first point, in Maryland the test for determining whether "two offenses arising from the same transaction are to be treated as one" for merger purposes is the required evidence test. *Brooks v. State, supra,* 284 Md. at 419, 397 A.2d 596. "Under this test, if each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge." *Id.* at 418, 397 A.2d 596. "However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited." *Newton v. State,* 280 Md. 260, 268, 373 A.2d 262 (1977).

■ In Johnson's view, the intent aspect of assault with intent to murder is not an element of that offense, but merely a factor that subjects the defendant to a statutory penalty of up to thirty years in prison. Since both assault with intent to murder and attempted armed robbery require an assault, he contends the offenses merge because only the latter includes an intent element (the intent to rob). He is wrong. In order to convict a defendant of assault with intent to murder, there must be proof that the assault was indeed committed with intent to murder. *Bird v. State,* 231 Md. 432, 436, 190 A.2d 804 (1963). "The principal element of the offense is intent. . . ." R. Gilbert & C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 3.5 (1983). Therefore, since each of the offenses under consideration requires proof of a fact the other does not, they are not considered the same and do not merge.[1]

---

1. While Johnson cites several non-Maryland decisions to support his argument to the contrary, including *State v. Mirault,* 457 A.2d 455 (1983), *Sherley v. Commonwealth,* 558 S.W.2d 615 (Ky.1977), and *Commonwealth v. Ayala,* 492 Pa. 418, 424 A.2d 1260 (1981) none of them is on point. Each involved application of the actual evidence test, as opposed to the required evidence test. The former test has been expressly rejected in Maryland. *Newton v. State,* supra; *Thomas v. State,* 277 Md. 257, 353 A.2d 240 (1976).

■ Recognizing the weakness of his first argument, Johnson presents a second line of defense by invoking the so-called "Rule of Lenity." That rule may operate even when, as here, offenses are separate and distinct for purposes of the required evidence test. It is based on the notion that "although the required evidence test is the normal standard for deciding the allowability of separate sentences, the Legislature may not intend in certain circumstances that separate sentences be imposed for two offenses growing out of the same transaction, even though the two offenses are clearly distinct under the required evidence test." *Whack v. State,* 288 Md. 137, 143, 416 A.2d 265 (1980). *See also Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). *Fields v. State,* 50 Md.App. 717, 719–20, 439 A.2d 1121 (1982).

■ As the cases cited make clear, the application of this doctrine is dependent upon legislative intent—whether "the Legislature [did or] did not intend, under the circumstances involved, that a person could be convicted of two particular offenses growing out of the same act or transaction." *Brooks v. State, supra,* 284 Md. at 423, 397 A.2d 596. With his usual lucidity, Judge Moylan explained the operation of the rule in *Walker v. State,* 53 Md.App. 171, 201, 452 A.2d 1234 (1982):

> If the Legislature intended two crimes arising out of a single act to be punished separately, we defer to that legislated choice. . . . If the Legislature intended but a single punishment, we defer to that legislated choice. If we are uncertain as to what the Legislature intended, we turn to the so-called 'Rule of Lenity' by which we give the defendant the benefit of the doubt [citations omitted].

But on the facts of this case, we do not think it appropriate to apply the Rule of Lenity. An examination of typical cases in which the Rule has been considered will explain our conclusion.

In *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), Ladner had wounded two federal officers

by a single shotgun blast. He was convicted under 18 U.S.C. (1940 ed.) § 254 (now 18 U.S.C. § 111) of two separate assaults, and received consecutive sentences. The Supreme Court saw the issue as whether, in enacting the statute, Congress intended that a single shotgun discharge would constitute a single assault, regardless of the number of those injured thereby, or whether Congress intended to create a separate and distinct offense for each federal officer harmed. Finding the language of the statute ambiguous and its legislative history unenlightening, the Supreme Court adopted "the less harsh meaning," 358 U.S. at 177, 79 S.Ct. at 213, and held that multiple convictions and sentences were not intended. A similar question was decided in a similar fashion in *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) in which Bell was charged with simultaneously transporting two women across state lines in violation of the Mann Act, 18 U.S.C. § 2421 and in which he was convicted for two violations of that law, and received consecutive sentences.

A slightly different factual pattern emerged in *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). There, the question was whether Congress intended to permit multiple punishments for a single transaction which resulted in convictions of unlawful entry into a bank with intent to rob, and of bank robbery, both in violation of the Federal Bank Robbery Act, 18 U.S.C. § 2113. Observing that Congress had specified no separate penalty for unlawful entry, but had merely imposed a penalty for bank robbery, the court applied the Rule of Lenity, although it recognized that "reasonable minds might differ" as to its view of legislative intent. 352 U.S. at 329, 77 S.Ct. at 407. *Compare Simpson v. United States,* 435 U.S. 6, 12, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978).

Yet another variation appeared in our *Loscomb v. State, supra.* As a result of a single automobile accident in which the occupants of one car were killed, Loscomb was convicted of and sentenced for violation of both Art. 27, § 388 (manslaughter by motor vehicle) and § 388A (homicide by motor

vehicle while intoxicated). Observing that "it is manifestly impossible to kill or slay one person twice," 45 Md.App. at 613, 416 A.2d 1276, Chief Judge Gilbert, writing for the court, concluded that "conviction of both charges, arising from the slaying of the same person" was impermissible "piling punishment on punishment." *Id.*

In a somewhat similar vein, in *Fields v. State, supra,* we held that convictions and consecutive sentences for violation of Art. 27, § 33 (storehouse breaking and stealing) and Art. 27, § 33A (storehouse breaking with intent to steal) merged when both were based on the same transaction. Recognizing that the two crimes were distinct under the required evidence test, Judge Lowe nevertheless reasoned that the Legislature did not intend the two offenses to be separately punished when a "theft accomplished . . . coincides with an intended theft, according to the pecuniary range provided by these statutes. . . ." 50 Md.App. at 721, 439 A.2d 1121. And in *Walker, supra,* we applied the Rule of Lenity because we were "aware of no indications that the Legislature intended an assault which is also the overt act of an attempt [to rape] to be punished separately from that attempt." 53 Md.App. at 201, 452 A.2d 1234.

In each of the cases from *Ladner* through *Walker,* the Rule of Lenity or its functional equivalent was applied in the absence of any indication of legislative intention to authorize multiple punishment for a conviction based on a single transaction. The opposite side of the coin is exemplified by *Whack v. State, supra.* There, Whack was convicted of and sentenced for robbery with a deadly weapon and use of a handgun in the commission of the same robbery. Reviewing legislative history, the Court of Appeals concluded that it "was clear . . . that the General Assembly intended to authorize the imposition of punishment under both § 36B(d) [use of a handgun] and § 488 [robbery with a deadly weapon] when one commits a robbery with a handgun." 288 Md. at 149, 416 A.2d 265. It declined to apply the Rule of Lenity, reasoning that when the legislature "expressly shows an intent to punish, under two separate statu-

tory provisions, conduct involving . . . aggravating factors, the Fifth Amendment's double jeopardy prohibition has not heretofore been regarded as a bar." *Id.* at 150, 416 A.2d 265. *See also Missouri v. Hunter, supra.*

A common thread connects all the cases we have just discussed. It is the assumption (often not articulated) that under the circumstances of a given case, it is reasonable to believe that the legislature that enacted a particular statute or statutes would express some intent as to multiple punishment. That assumption is appropriate when a single act is charged as multiple offenses under a single statute (*Ladner, Bell* and *Prince*), where the subject of two statutes is of necessity closely intertwined (*Loscomb* and *Fields*), where one offense is necessarily the overt act of a statutory offense (*Walker*), and where one statute, by its very nature, affects other offenses because it is designed to effect multiple punishment (*Whack*). Under those circumstances, it is not unreasonable to assume that the legislative body contemplated the possibility of multiple punishment and to conclude that unless the intention in favor of multiple punishment is clear, as in *Whack,* the Rule of Lenity or its equivalent should be applied against the imposition of multiple punishment. But that thread is not present in the case at bar.

What is now Art. 27, § 12 (assault with intent to murder) was enacted by Ch. 138, Laws of 1809, as part of an early codification of Maryland criminal law. That codification did not include the offense of attempted robbery with a dangerous or deadly weapon (now Art. 27, § 488) which did not become part of our statutory law until enacted by Ch. 457, Acts of 1927. Not only were these two statutory offenses created 118 years apart but there is no evidence that the legislature ever considered one when amending the other, nor was there reason for it to do so. An assault with intent to murder may be and often is committed under circumstances showing no intent to rob; attempted armed robbery may be and often is committed under circumstances not involving the intent to kill. One offense is not necessarily

the overt act of the other. And the punishment provided for each offense implicates no necessary likelihood of multiple punishment with respect to the other offense, since, unlike the handgun use law, the commission of one of these two offenses is not an essential predicate to the commission of the other.

As long ago as 1958, the Supreme Court, in refusing to apply the Rule of Lenity to multiple convictions arising out of the same transaction, observed:

> It is one thing for a single transaction to include several units relating to prescribed conduct under a single provision of a statute. It is a wholly different thing to evolve a rule of lenity for three different offenses created by Congress at three different times. . . .

*Gore v. United States,* 357 U.S. 386, 391, 78 S.Ct. 1280, 1284, 2 L.Ed. 1405 (1958). Much more recently in *Albernaz v. United States,* 450 U.S. 333, 342, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981) the court noted that the Rule of Lenity is designed as an aid to resolving ambiguity, not as a device for creating it. In that case, the Supreme Court permitted multiple punishments to stand, where the offenses were separate and distinct under the required evidence test stated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

In the case at bar, we find *Gore* and *Albernaz* persuasive. We are faced with offenses, different in nature and separate and distinct under the required evidence test. The statutes prescribing those offenses were enacted at different times. The statutes themselves are unambiguous in their penalty provisions; we are aware of no legislative history suggesting otherwise. Thus, we conclude that the Rule of Lenity does not apply.

We hold that it was not impermissible for Johnson to be convicted of and consecutively sentenced for both assault with intent to murder and attempted armed robbery in this case.

## The Two Handgun Offenses

Johnson next urges us to apply the Rule of Lenity to vacate one of his handgun sentences. He concedes, as he must, that the Court of Appeals has construed Art. 27, § 36B(d) as manifesting a legislative intent to impose multiple punishment for an underlying felony and for an accompanying handgun violation. *Whack v. State, supra,* 288 Md. at 148, 416 A.2d 265. But, he argues, there is no clear indication "that the legislature intended to impose separate penalties for a single use of a handgun in simultaneously occurring assault [with intent to murder] and attempted robbery offenses directed against the same victim in a single transaction."

At first blush, it might seem that this argument is disposed of by our *Newton v. State,* 31 Md.App. 344, 356 A.2d 274 (1976).[2] There, rejecting an argument like that now made by Johnson, we said:

> Appellant was charged in two separate indictments [as was Johnson]. In one he was charged with murder; in the other with attempted armed robbery. In each indictment he was also charged with unlawful use of a handgun in the commission of a crime of violence. As we have seen, murder and attempted armed robbery are separate and distinct crimes and convictions thereof do not merge. It is at once apparent that the appellant used a handgun in the commission of the crime of murder. Likewise, he used a handgun, although it was the same gun, to commit the crime of attempted armed robbery. Since the crimes of murder and robbery do not merge, we see no logical or rational reason why the handgun convictions underlying

---

2. We are aware that in its *Newton v. State,* supra, the Court of Appeals reversed our Newton. But the reversal occurred only because the Court of Appeals held that Newton's attempted robbery conviction merged into the felony murder conviction. The multiple handgun conviction issue was not addressed. Obviously, there was no need for the Court of Appeals to consider it. Therefore, that portion of our Newton is still viable.

these separate convictions should somehow merge. 31 Md.App. at 348–49, 356 A.2d 274.

But *Newton* is distinguishable. In that case, the handgun sentences were concurrent; here they are consecutive. Thus, the *Newton* court was not presented with the multiple punishment issue which Johnson poses. As our earlier discussion discloses, this issue is peculiarly within the purview of the Rule of Lenity, with its emphasis on legislative intent as to multiple punishment.

■ It is clear from *Whack* that in enacting § 36B(d) the legislature intended to authorize multiple punishments for the underlying felony or crime of violence and for the separate misdemeanor of using a handgun to commit that felony or crime of violence. The question here, however, is whether the legislature indicated "with certainty . . .", *Prince v. United States, supra,* 352 U.S. at 328, 77 S.Ct. at 406, that it intended to authorize consecutive handgun punishments when a single handgun is used against a single victim in a single transaction encompassing the commission of two separate and distinct felonies under the required evidence test.

Section 36B(d) makes it a "separate misdemeanor for a person to use a handgun in the commission of any felony or crime of violence" and calls for a sentence for that use "in addition to any other sentence imposed by virtue of the commission of *said* felony" [emphasis supplied]. While this language may be subject to various interpretations in the context of the instant case, one of those surely is that the legislative purpose of discouraging handgun use is achieved when one handgun sentence is imposed consecutive to the sentence imposed for one ("said") felony. If, then, "we are uncertain as to what the Legislature intended, we turn to the . . . 'Rule of Lenity' by which we give the defendant the benefit of the doubt. . . ." *Walker v. State, supra,* 53 Md. App. at 201, 452 A.2d 1234.

■ We think that the Rule of Lenity is applicable to the handgun sentences imposed in this case. This is a situation

in which the legislature had before it the issue of multiple punishments, but expressed its intent in that regard ambiguously. Under these circumstances, we hold that use of a single handgun against a single victim in a single transaction does not permit the imposition of consecutive handgun sentences.

### In-Court Identification

The trial court suppressed evidence of victim Osborne Holland's photographic identification of Johnson. It did so principally because it found impermissible suggestiveness based on the fact that Holland had been shown two photo arrays, both containing pictures of appellant Johnson, but only one including a picture of his twin brother, Donald. Holland was unable to make an identification when shown the array containing pictures of both twins. Johnson now argues, as he did below, that Holland's in-court identification of him was tainted by the suggestive photo identification, and also should have been suppressed.

■ As we observed in *Harker v. State,* 55 Md.App. 460, 472, 463 A.2d 288 (1983), "once it is shown that there were impermissibly suggestive identification procedures, an in-court identification based on those procedures is allowable only if it can be shown that positive factors of reliability outweigh the corrupting effect of the suggestive procedures." The trial judge considered those reliability factors and concluded that the in-court identification was permissible.

■ The reliability factors include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the time of the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In the instant case, Holland viewed his assailant only briefly, but lighting conditions were good, and there is

no question that Holland's attention was focused on the attacker. And while the record does not show that Holland gave any description of Johnson to the police, Johnson was previously known to Holland. He had seen Johnson on many prior occasions in the neighborhood, including once earlier on the day of the crime. Moreover, Holland's initial in-court identification of Johnson was devoid of uncertainty. While the length of time between the crime and the initial in-court confrontation was considerable—over a year—we do not think Judge Karwacki was clearly erroneous in deciding that the reliability factor in this case outweighed the corrupting effect of the earlier photo identification.

### Sufficiency of the Evidence

Given the admissibility of Holland's in-court identification, his testimony was sufficient, if believed, to establish that the assault with intent to murder and the attempted armed robbery occurred and that Johnson was the criminal agent. Holland did not testify that the weapon used by Johnson in the shooting was a handgun, but that evidence was supplied by Charles Brown, an off-duty police officer, who happened to be passing the laundromat when the incident took place. Brown said he saw a man backing out of the laundromat firing a gun. Brown pursued the man, who fired at him with the same weapon, which Brown identified as a .38 caliber handgun with a four-inch barrel. Brown was unable to catch this individual, and his description of the individual did not perfectly match Johnson's description, although there were points of similarity. But whether Johnson was the man observed by Brown was a matter for the jury. The evidence "could reasonably support a finding of guilt beyond a reasonable doubt," *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980), and thus met the standard of sufficiency applicable on appellate review. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, *reh. den.* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

*Single Eyewitness Instruction*

In his instructions to the jury, Judge Karwacki said: With regard to the identification in this case of the defendant as the perpetrator of the crimes, the identification specifically of Osborne Holland, you are instructed that the identification of an accused by a single eyewitness to an alleged crime, if believed, even when that single eyewitness is the alleged victim, is sufficient to convict under the law.

■ Johnson did not except to this instruction, so his current dissatisfaction with it ordinarily would not be preserved for review. Md.Rule 757 f and h; Md.Rule 1085. He claims the instruction amounted to plain error, but we do not find this an "exceptional case" in which the plain error rule is properly invoked. *Dempsey v. State,* 277 Md. 134, 142, 355 A.2d 455 (1976).

■ That this instruction contained an accurate statement of the law cannot be doubted. *England v. State,* 21 Md.App. 412, 320 A.2d 66 (1974). A defendant generally is not prejudiced if the court's instructions are a correct statement of applicable law. *Baumgartner v. State,* 21 Md.App. 251, 319 A.2d 592 (1979).

Moreover, this particular instruction did not improperly highlight Holland's testimony or constitute a statement that the court was satisfied that Holland had made a positive identification of Johnson. Holland's testimony was only deemed sufficient "if believed." Elsewhere in the instructions, Judge Karwacki pointed out that the jury was the sole judge of the credibility of witnesses, and that it was not bound to believe the testimony of any witness, even if uncontradicted. He outlined the factors the jury should consider in deciding what testimony to believe. He explained the State's heavy burden of proof. Viewing the instructions as a whole, as we must, we find no error. *State v. Garland,* 278 Md. 212, 220, 362 A.2d 638 (1976).

*Suppression of Material Evidence by the State*

Near the scene of Officer Brown's pursuit of the individual who ran from the laundromat, a jacket and a hat were recovered. While Detective Dunnigan, who had participated in the investigation of the case, mentioned these garments in his testimony, they were not produced at the trial. Johnson says he was denied due process because he was not given an opportunity to try on the clothing in order to demonstrate "that [it] could not conceivably have been worn by him on the occasion in question and to then demonstrate that it was another person who committed the offenses attributed to him."

Although Johnson was aware of the garments (he called Detective Dunnigan to testify about them) he made no demand for their production prior to trial, nor did he raise any objection at trial with respect to the failure to produce them. Under these circumstances, his contention is not before us. *See Hopkins v. State,* 19 Md.App. 414, 428, 311 A.2d 483 (1973).

SENTENCE UNDER FOURTH COUNT IN CASE NO. 18223201 VACATED. REMAINING JUDGMENTS AFFIRMED. APPELLANT TO PAY THE COSTS.