# RICKY ARVIN WALKER v. STATE OF MARYLAND

[No. 1608, September Term, 1981.]

*Decided December 6, 1982.*

The cause was argued before MOYLAN and LISS, JJ., and J. FREDERICK SHARER, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*W. Michel Pierson, Assigned Public Defender,* for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Ara Crowe, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The review of the four convictions in this case is routinely unremarkable; the review of the four sentences, however, presents a series of intriguing problems involving the merger of offenses, the legitimacy of the open-ended common law sentence, the tangled relationship between the common law crime of attempt and the statutory aggravated assaults, and finally the impact of those statutory aggravated assaults upon common law assault. The appellant, Ricky Arvin

Walker, was convicted by a Baltimore City jury, presided over by Judge Peter D. Ward, of (1) attempted first-degree rape, (2) burglary, (3) common law assault, and (4) openly carrying a dangerous and deadly weapon. Judge Ward sentenced the appellant to four consecutive terms: (1) life imprisonment for the attempted first-degree rape, (2) twenty years for the burglary, (3) twenty years for the assault, and (4) three years for carrying a deadly weapon, for a total of life plus forty-three years.

## The Convictions

The three appellate contentions dealing with the legitimacy of the convictions are easily disposed of:

(1) That the testimony of two eye-witnesses was so contradictory as to warrant a dismissal of the charges;

(2) That there was no probable cause to justify the warrantless arrest of the appellant and that, as a result, all evidence seized as an incident of that arrest should have been suppressed;

(3) That the trial judge improperly responded to a question from the jury.

### A. The Effect of Contradictory Testimony (If Any)

The appellant's contention with respect to the testimony of two State's witnesses being so contradictory as to render it completely unworthy of belief, is a contention raised at his express request. It is clear that he is seeking to rely upon *Kucharczyk v. State,* 235 Md. 334, 201 A.2d 683 (1964), although he does not mention *Kucharczyk* by name or cite any other case as authority for his proposition of law. The contention is clearly without merit. A brief discussion of the State's evidence, nonetheless, will serve to provide a factual setting for the other contentions (including the more significant contentions involving the sentencing) that follow.

The initial witness for the State was the victim herself, Norva Lee Burroughs. On the evening of March 14, 1981,

she checked to see that her children were asleep, locked the doors of her home at 2738 Loyola Southway, and then fell asleep in her own bedroom while watching the 11 p.m. news. She was prodded awake by a man wearing a green and yellow ski mask and a dark jacket. He was standing over her with a knife in his hand. He ordered her to get out of bed and to remove her clothes. His pants were down and he was wearing green underwear. The only light available in the room was from the television set, which was still playing.

As the victim was in the act of taking off her nightgown, she grabbed for the knife and began to struggle with her assailant. He ordered her to shut up. She was beaten, kicked, and knocked to the floor. As she began to yell, he ordered her to shut up again. She was beaten in the face and cut on the leg and hand. The resistance was, however, successful, because the assailant ultimately fled from the bedroom. The victim never saw her attacker's face, since the ski mask remained on during the entire incident. She remembered finding a telephone and calling the police. She suffered a laceration of the left hand, a fractured nose, and a fractured jaw. She also testified that there were two lights in the hallway outside her bedroom and that they both were on. She had been expecting a friend, Rolley Henry, but the door to her home was locked.

The first State's witness who could make a positive identification of the appellant was Washanna Washington, the thirteen-year-old daughter of the victim. She was awakened by her mother calling her name. Initially, she tried to use the telephone but could not get a dial tone. At that moment, she heard the doorbell ring and went to answer the door. At the door was the friend whom her mother was expecting, Rolley Henry, known as "Tree." Washanna alerted "Tree" to danger and told him to hurry upstairs. She testified that a bright light was on over the stairwell. In a few moments, she observed "Tree" and the man she identified as the appellant struggling. She was standing approximately fifteen feet from the site of the struggle. She had known the appellant from earlier occasions when she had seen him in the neighborhood. He lived across the street. She saw "Tree," in

the course of the struggle, pull the ski mask from the appellant's face. She also observed that the appellant was wearing a dark pea jacket and dark pants. Washanna ran from the house to a nearby pay telephone and called the police.

The other identifying witness was Rolley "Tree" Henry. He testified that he rang the doorbell and was admitted by Washanna at sometime between 11 p.m. and midnight. As he rushed upstairs, he observed a man coming out of the victim's bedroom, wearing a mask, a pea coat, and dark pants. As they began to struggle, the intruder yelled, "Do you want to die?" Rolley Henry had on earlier occasions seen the appellant's brother, whom he knew, wearing the same ski mask that the intruder was wearing that night. In the course of the struggle, the ski mask came off. Rolley Henry made a positive identification of the appellant as the intruder with whom he was struggling. At one point, Mr. Henry threw the appellant down the steps. The appellant ran outside and the struggle then continued on the porch. After the appellant bit Mr. Henry's hand, the appellant was able to break loose and run. Mr. Henry chased him into an alley but ultimately lost sight of him.

The alleged inconsistency, relied upon by the appellant, was between Washanna Washington and Rolley Henry. Washanna Washington had testified that the lights in the hallway were on as Mr. Henry rushed upstairs. Initially, Mr. Henry testified that the lights were not on as he rushed upstairs. On cross-examination, however, he remembered that they were, in fact, on. Under the circumstances, we do not even see a contradiction between the two State's witnesses. In no event, would a contradiction on such a peripheral matter be fatal, even if it were there.

With respect to an arguable contradiction between Washanna Washington and Rolley Henry as to whether the light over the stairwell was on, *Bailey v. State,* 16 Md.App. 83, 96, 294 A.2d 123 (1972), is controlling:

> "Nor does *Kucharczyk* apply where a State's witness is contradicted by other State's witnesses. *Scott v. State,* 2 Md.App. 709, 713-715; *Tillery v.*

> *State,* 3 Md.App. 142, 148; *Gunther v. State, supra;*
> *Hunt v. State, supra."*

As to an arguable contradiction between Rolley Henry's testimony on direct examination and his amended testimony on cross-examination as to whether the light was initially on, *Bailey v. State, supra,* at 16 Md.App. 96, is again controlling:

> "Nor does *Kucharczyk* apply where a witness's trial testimony contradicts itself as to minor or peripheral details but not as to the core issues of the very occurrence of the *corpus delicti* or of the criminal agency of the defendant. . . . Nor does *Kucharczyk* apply where a witness appears initially to have contradicted himself but later explains or resolves the apparent contradiction."

There is an additional answer to the appellant's *Kucharczyk*-based claim. The appellant was arrested by the police at approximately midnight, minutes after the crime occurred, as he stood in a basement doorway of a house in the 2700 block of Loyola Southway. This was the very block where the victim resided and where the crime occurred. A hovering police helicopter had alerted the arresting officer to the presence of the suspect at that location. When the police arrested the appellant, he was wearing a dark-colored pea coat and dark pants. There were grass stains and sand on his clothing and a cut on his hand. Following his arrest, his clothes, including his underclothes, were seized. The victim identified the clothing taken from the appellant as the clothing her assailant was wearing, right down to the green underwear. Once again, *Bailey v. State, supra,* at 16 Md.App. 96-97, is controlling:

> "Nor does *Kucharczyk* apply where a witness does contradict himself upon a critical issue but where there is independent corroboration of the inculpatory version."

The final response to the appellant's claim is that even a classic *Kucharczyk* situation does not deal with the exclu-

sion of testimony but only with the ultimate legal sufficiency of the State's entire case. The conclusion to our discussion of *Kucharczyk* in *Bailey v. State, supra,* at 16 Md.App. 97, is apposite here:

> "In each of those situations, our system of jurisprudence places reliance in the fact finder to take contradictions or equivocations properly into account and then to make informed judgment in assessing a witness's credibility and in weighing that witness's testimony. Even in a pure *Kucharczyk* situation, the ultimate resolution is solely in terms of measuring the legal sufficiency of the State's total case and not in terms of the exclusion of the contradictory witness's testimony."

It is clear that there was ample evidence in the case to permit a jury to be fairly convinced beyond a reasonable doubt of the appellant's guilt. *Williams v. State,* 5 Md.App. 450, 459, 247 A.2d 731 (1968); *Metz v. State,* 9 Md.App. 15, 23, 262 A.2d 331 (1970).

B. *Probable Cause for the Appellant's Warrantless Arrest*

The appellant's second contention is that there was no probable cause to support the warrantless arrest of the appellant. In denying the appellant's motion to suppress the clothing that was seized as an incident of that arrest, Judge Ward ruled:

> "Counsel, I have no question in my mind whatsoever that the officer had ample probable cause to make an arrest in this case. Therefore, the arrest was lawful and that any evidence seized reasonably contemporaneously with the arrest was lawfully seized and may be admitted during the trial of the case."

We hold that Judge Ward was correct in that ruling. In making our constitutionally mandated, reflective, independent judgment on the mixed question of law and fact called probable cause, *Walker v. State,* 12 Md.App. 684, 691-695,

280 A.2d 260 (1971), we have no difficulty in finding that it was there.

Officer Allen Wharton of the Baltimore City Police Department responded within minutes to a radio alert involving a rape at 2738 Loyola Southway (we do not find significant the fact that the emergency alert in the excitement of the moment referred to "rape," whereas the crime actually perpetrated may have been "attempted rape" or "assault with intent to rape"). The description that was broadcast of the rape suspect was that of a black male, wearing a dark-colored pea coat and dark pants. As he began to search the immediate vicinity, Officer Wharton received a follow-up broadcast from the police helicopter hovering overhead. It was to the effect that a subject fitting the description of the suspect was in the alley in the rear of a house in the 2700 block of Loyola Southway. Officer Wharton then observed the appellant standing on the back steps of a house in that block, in a basement doorway, wearing a navy blue pea coat and black pants. He had grass stains and sand on his clothing. The officer observed a cut on the person's hand. When Officer Wharton demanded iden- tification, the person gave his name as "Ricky Walker." By portable radio, Officer Wharton was advised by Officer Knight, who was then in the victim's home, that the assailant's name was Ricky Walker. Under the circum- stances, the probable cause was unassailable. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

The appellant now raises for the first time a subissue he did not address at trial — not that there was lacking prob- able cause to believe that the appellant was the person involved but that there was no probable cause for the police to believe that a crime had occurred. Even if preserved for appellate review, the point is disingenuous. From the fact that both the attack victim herself and her daughter called the police, who responded to the scene, and from the fact that Officer Knight was in their home with them, presumably taking a full report and unquestionably learning the name

of the attacker as Ricky Walker, we have no difficulty reasonably in inferring that sufficient details of the criminal attacks were communicated to the police team to establish that a crime had, indeed, occurred.

C. *The Judge's Response to the Jury's Question*

While the jury was deliberating on the verdict, it sent the following note out to Judge Ward:

> "Were there any fingerprints on the screw driver, knives or comb or any other object? If so, could they be positively identified with Mr. Walker's? Mr. Walker had a wound on his hand, was it big enough to leave blood on either knife and was the blood his type?"

Judge Ward's response was, "You must decide the case on the basis of the evidence before you. That's all and you may retire to continue your deliberations." Although we cannot imagine a more appropriate response, the short answer to the contention is that appellant's counsel made no comment about this response and certainly entered no objection to it. Under the circumstances, there is nothing preserved for appellate review. Md. Rule 757 f and h; Md. Rule 1085; *Huff v. State,* 23 Md.App. 211, 220, 326 A.2d 198 (1974).

## The Sentences

The propriety of the twenty-year sentence for burglary, to be served consecutively with any other sentences in the case, is not disputed. The other three sentences, however, raise a number of perplexing problems.

A. *Life Imprisonment for Attempted Rape*

The challenge to the sentence of life imprisonment for attempted rape in this case is mounted in several different ways. There is first the question of whether such a life sentence is unconstitutional, under the Federal and/or State Constitutions, because it represents cruel and unusual punishment. There is secondly the question of whether the life

sentence for attempted rape violates the common law of Maryland. That second question, in turn, breaks out into two subquestions. The first is whether a life sentence for attempted rape, as an abstract principle, violates the common law of Maryland *per se.* There is the distinct question of whether it does so in the procedural posture of this particular case.

## 1. The Constitutional Question

Amendment VIII of the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Its virtually verbatim Maryland counterpart, Article 25 of the Maryland Declaration of Rights, provides:

"That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law."

A final provision of the Maryland Constitution, apparently aimed more at the Legislature that makes the laws than at the courts which impose the penalties, Article 16 of the Declaration of Rights, provides:

"That sanguinary Laws ought to be avoided as far as it is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter."

In looking first at the Maryland constitutional provisions, a long line of cases from the Court of Appeals reveals its disinclination to apply the provisions to restrict the length of a sentence. In a scholarly analysis in *Delnegro v. State,* 198 Md. 80, 81 A.2d 241 (1951), Judge Delaplaine observed that, "The term 'cruel and unusual punishment' has usually been understood to mean barbarous punishment by torture."

198 Md. at 88. After examining the early Maryland case law and the *Commentaries* of Justice Story, Judge Delaplaine cited with approval the Supreme Court of Indiana, at 198 Md. 89:

> "The Supreme Court of Indiana observed that the word 'cruel,' considered in reference to the time when it was included in the Bill of Rights, meant such punishment as the whipping post, the pillory, burning at the stake, and breaking on the wheel, and that the term 'cruel and unusual punishment' does not forbid legislation providing imprisonment for life or for years, or the penalty of death by hanging or electrocution. *Hobbs v. State,* 133 Ind. 404, 32 N.E. 1019, 1021, 18 L.R.A. 774."

He concluded that the constitutional prohibition went essentially to the means or quality of punishment and not to its quantity.[1]

In any event, the Maryland constitutional provisions provide a less-than-firm point of departure in view of the interpretation given them by the Court of Appeals in *Kirschgessner v. State,* 174 Md. 195, 197-198, 198 A. 271 (1938):

> "No standard was fixed by the two sections invoked as to what is cruel and unusual, so that *Legislatures and courts can only regard these provisions as advisory.* What may be cruel and unusual in one case may be mild punishment in another." (Emphasis supplied.)

---

**1.** As to the permissible means of punishment, it is interesting to note the holding of the Court of Appeals in Foote v. State, 59 Md. 264 (1883), in which it held that a penalty of being "whipped seven lashes by the sheriff" for brutal wife beating was not constitutionally prohibited. It observed, at 267:

"That the punishment of whipping was not considered a 'cruel or unusual punishment,' and, therefore, coming within the prohibition of the Constitution, is most conclusively shown by the fact that the punishment by whipping was recognized by the statute law of the State under all these Constitutions, certainly down to the Constitution of 1864 . . . ."

We are provided a firm constitutional starting point, however, by the Eighth Amendment of the United States Constitution. It is, in the first instance, *in pari materia* with Article 25 of our Declaration of Rights, all the more so because both of them were taken virtually verbatim from the English Bill of Rights of 1689. *Phipps v. State,* 39 Md.App. 206, 211, 385 A.2d 90 (1978). The Eighth Amendment, moreover, is now deemed to be incorporated into the due process clause of the Fourteenth Amendment, and is, therefore, binding on the States. *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

In *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Supreme Court acknowledged that the early history of the Eighth Amendment had been concerned primarily with proscribing torture and other barbarous methods of punishment but that it had evolved into a protection with a dual purpose. The first of these purposes was to avoid barbarous and wanton punishment and the second was to deal with the proportionality between the punishment imposed and the severity of the crime. The Supreme Court held, at 428 U.S. 173:

> "[T]he inquiry into 'excessiveness' has two aspects. First, the punishment must not involve the unnecessary and wanton infliction of pain. . . . Second, the punishment must not be grossly out of proportion to the severity of the crime."

Actually, several of the early Maryland cases had dealt with the issue of proportionality in a constitutional setting. They make it clear that proportionality — the constitutionality of the length of a sentence — cannot be resolved in the abstract but depends upon the unique facts of each particular case. The Maryland case that *Delnegro* relied on most heavily was *Mitchell v. State,* 82 Md. 527, 34 A. 246 (1896). There, the defendant had been acquitted of the first and third counts of a three-count indictment, charging statutory rape and simple assault. He was convicted, however, under the second count, charging attempted statutory rape, and received a sentence of fifteen years. The defendant

there claimed that this violated his Maryland constitutional right against "cruel and unusual punishment" because it exceeded the ten-year maximum provided by statute for the crime of assault with intent to commit statutory rape (which had not been charged in the defendant's case). Judge Bryan discussed the constitutional provisions and concluded that "it was not their purpose to dispense with punishments of great severity." 82 Md. at 533. He observed that under the open-ended sentencing provisions of the common law, even a severe sentence will not be unconstitutionally disproportionate if the facts of the case reveal that the crime was unusually aggravated or atrocious. He said for the Court of Appeals, at 82 Md. 533-534:

> "Severity is not cruelty. The punishment ought to bear a due proportion to the offence. Crimes of great atrocity ought to be visited with such penalties as would check, if not prevent their commission. It is impossible in the abstract to mark the boundaries which separate cruelty from just severity. *If the circumstances accompanying a crime are of unusual aggravation, the punishment ought to be unusually severe.*"[2] (Emphasis supplied.)

In making that two-pronged inquiry, we observe that the first of the constitutional subquestions is not remotely involved. The appellant here was not sentenced to any wanton or barbarous infliction of pain but only to the ordinary incidents of prison life. With respect to the second of the constitutional subquestions — proportionality — that, as the case law makes clear, is a question which can never be

---

2. The further observations of Judge Bryan, at 82 Md. 534, indicate that there was almost no punishment which he would have deemed to be "cruel and unusual" for the crime then under his review:

"It exceeds in its malignity and depravity the crime of deliberate murder. And the wretched culprit barely escaped the just punishment of death by a technicality which shelters the commission of the worst of crimes, and which ought to be rooted out of our law. The verdict of the jury convicted the traverser of an offence which the law places in the category of misdemeanors. These are punishable by fine and imprisonment in the discretion of the Court."

answered in the abstract but depends upon the facts of each individual case. The circumstances of this crime were unusually aggravated. The appellant attempted to perpetrate a crime upon his victim which, if consummated, carried a possible penalty of life imprisonment. He did so as a burglar, invading the very sanctuary of her home and her bedroom in the dead of night. Her child was asleep in an adjoining room. The appellant attempted to threaten his victim into submission at the point of a knife. When she did not initially submit, he beat her repeatedly. In the course of the attack, she was cut; she suffered a broken nose; and she suffered a broken jaw. Under all of the circumstances, we cannot say that a sentence of life imprisonment was so disproportionate to the gravity of the crime as to render it unconstitutionally excessive or disproportionate.[3]

The life sentence for attempted first-degree rape did not offend the constitutional prohibitions, state and federal, against cruel and unusual punishment.

## 2. The Sub-constitutional Question

There remains to be resolved the question of whether a sentence of life imprisonment for attempted rape is permitted under the statutory and the common law of Maryland. This also is a double-barrelled issue: (a) Is life imprisonment for attempted rape permitted as an abstract proposition?; and (b) Even if it is, is it nevertheless forbidden in the procedural posture of this particular case?

### a. The Life Sentence as an Abstract Proposition

Since the mid-1500's, the common law has recognized the misdemeanor known as criminal attempt.[4] It is, fur-

---

3. An additional aggravating factor, for sentencing purposes, was the prior conviction of the appellant in 1973 for rape and burglary. The earlier rape had also involved the use of a knife, and the appellant received a twelve-year sentence. He failed, moreover, to fulfill his obligations to participate in a therapy and treatment program prescribed by the Patuxent Institution.

4. We discussed the origins of this common law crime in Gray v. State, 43 Md.App. 238, 239, 403 A.2d 853 (1979):

thermore, clear that the common law misdemeanor, notwithstanding its post-Revolutionary final crystallization, has always been recognized as part of the common law of Maryland. Hochheimer, *Crimes and Criminal Procedure* 297-298 (2d ed. 1904); *Franczkowski v. State,* 239 Md. 126, 127, 210 A.2d 504 (1965); *Wiley v. State,* 237 Md. 560, 563-564, 207 A.2d 478 (1965); *Lightfoot v. State,* 278 Md. 231, 360 A.2d 426 (1976); *Lightfoot v. State,* 25 Md.App. 148, 334 A.2d 152 (1975); *Fisher v. State,* 1 Md.App. 505, 231 A.2d 720 (1967). Attempt is, moreover, a common law crime that still carries the common law penalty. The common law penalty is anything in the discretion of the sentencing judge, provided only that it not be "cruel or unusual." *Apple v. State,* 190 Md. 661, 668, 59 A.2d 509 (1948); *Heath v. State,* 198 Md. 455, 459, 85 A.2d 43 (1951). That broad discretion constrained by that single limitation says, in effect, "Unless otherwise provided, anything is legal that is not unconstitutional." Since we have already determined that there is nothing unconstitutional about a sentence of life imprisonment for attempted rape, either in the abstract or under the facts of this case, there is, *ipso facto,* nothing illegal about it.

---

"The notion that an attempt to commit a crime — any crime, felony or misdemeanor, statutory or common law, preexisting or of later origin — is itself a crime came relatively late into Anglo-American jurisprudence. It had its origins in the Court of Star Chamber, during Tudor and early Stuart times.[1] Its crystallization into its present form, however, is generally traced to the case of Rex v. Scofield, Cald. 397, in 1784.[2] The court held in Rex v. Scofield, 'The intent may make an act, innocent in itself, criminal; nor is the completion of an act, criminal in itself, necessary to constitute criminality.' The doctrine was locked into its modern mold by 1801 with the case of Rex v. Higgins, 2 East 5. Relying on *Scofield,* the court in *Higgins* confirmed a conviction, saying, 'All offenses of a public nature, that is, all such acts or attempts as tend to the prejudice of the community, are indictable.' In the wake of *Scofield* and *Higgins,* it was clear that an attempt to commit any felony or misdemeanor, of common law origin or created by statute, was itself a misdemeanor."

---

1. See generally Sayre, *Criminal Attempts,* 41 Harv. L. Rev. 821 (1928), and Hall, *General Principles of Criminal Law,* 558-74 (2nd Ed. 1960).
2. LaFave and Scott, *Criminal Law* (1972), p. 424.

There is in the special case of attempt and conspiracy,[5] moreover, an at-least implicit legislative *imprimatur* (as well as explicit upper limit) not present in the cases of other crimes carrying the common law punishment. With respect to attempts, Md. Code Ann. Art. 27, § 644A (1982 Repl. Vol.) provides:

> "The sentence of a person who is convicted of an attempt to commit a crime may not exceed the maximum sentence for the crime attempted."

We read into that explicit legislative prohibition against exceeding certain limits, an implicit legislative approval of going up to those limits.

The object of the attempt in this case was "to commit rape in the first degree." Md. Code Ann. Art. 27, § 462 (b) (1982 Repl. Vol.) provides:

> "Any person violating the provisions of this section [first-degree rape] is guilty of a felony and upon conviction is subject to imprisonment for no more than the period of his natural life."

We read § 462 (b) and § 644A in combination both as setting the upper limit of life imprisonment as a penalty for attempted first-degree rape and also as constituting legislative recognition of such a sentence as within that legal limit.

*b. The Life Sentence in the Procedural Posture of the Case*

When the object is rape (generally or in the first degree), there are at least two frequently overlapping inchoate crimes that may be involved — assault with intent to rape[6] and attempted rape. Initially, it is well settled that the promulgation of the statutory aggravated assault did not preempt the field and thereby displace the common law crime. "In Maryland, assault with intent to rape and

_____

5. For the sentencing provision governing conspiracies to commit crimes, see Md. Code Ann. Art. 27, § 38 (1982 Repl. Vol.). In combination, the attempt and conspiracy limitations work the very logical result of holding the sentences for inchoate crimes within the sentencing limits of the consummated crimes.

6. Md. Code Ann. Art. 27, § 12 (1982 Repl. Vol.).

attempted rape are retained as separate and distinct crimes." *Christensen v. State,* 33 Md.App. 635, 640, 365 A.2d 562 (1976).[7] As we observed in *Gray v. State, supra,* at 43 Md.App. 241:

"For inchoate, not fully-consummated crime, society has long had available in its arsenal both the statutory offense of 'assault with intent to . . .' and the common law offense of criminal attempt. Although these two offenses have a significant overlap, they are nonetheless distinct and each addresses certain pockets of inchoate criminal activity not covered by the other."

It is, moreover, well settled that the prosecution is under no obligation to tailor the configuration of charges to the advantage of the defendant. The prosecutor could charge both attempted rape and assault with intent to rape or could charge either of them alone as suits his tactical purpose. The architecture of the charging document is in the total control of the State. As Judge Wilner well analyzed the situation in *Turner v. State,*[8] 45 Md.App. 168, 172-173, 411 A.2d 1094 (1980):

"The State may have all sorts of valid reasons for charging one offense rather than another — a lesser offense rather than a greater. It acts upon the evidence available to it — known to it — at the time; and that evidence may be quite different from what unfolds at trial. The State may decline to charge a more serious offense because, at the time of charging, the evidence only indicates a lesser offense, or suggests circumstances calling for compassion. This is part of the discretion accorded to State's Attorneys. *See Murphy v. Yates,* 276 Md.

---

**7.** *See also* Avery v. State, 15 Md.App. 520, 547, 292 A.2d 728, 746 (1972), and Middleton v. State, 6 Md.App. 380, 385-86, 251 A.2d 224, 227 (1969).

**8.** In *Turner,* we affirmed a 12-year sentence for simple assault to be served consecutively with an 18-month sentence for larceny in circumstances where 10 years would have been the maximum, had the assault and the larceny been joined into a single charge of robbery.

475 (1975); *Brack v. Wells,* 184 Md. 86 (1944). At trial, evidence may appear that puts the defendant (his actions and character) in a much different light. Is the judge, in sentencing, to be bound to statutory maxima for every conceivable crime with which the defendant could have been charged based on the evidence actually revealed? If so, we perceive a great deal of confusion, second-guessing, and error."

A very different situation prevails, however, once the State has brought a defendant to trial on multiple, overlapping charges. The tightly reasoned opinion of Judge Eldridge for the Court of Appeals in *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980), dealt with the sentencing limitations which the State imposes on itself, advertently or inadvertently, when it charges two offenses which can be deemed "the same offense" within the contemplation of double jeopardy language. As long as there is neither multiple conviction nor multiple punishment, the double jeopardy clause itself is not engaged. Under Maryland common law, however, the State is deemed to have established the graver of the two offenses as the "flagship" crime, thereby setting the upper limit for punishment purposes. In *Simms,* the defendant was found not guilty under a count charging assault with intent to rob (carrying a maximum penalty of ten years) and guilty of simple assault, for which he was sentenced to twelve years imprisonment. The Court held that "When the State decided to charge assault with intent to rob as well as simple assault based on the same acts, and to proceed to trial on both charges, the State was, as a matter of legal necessity . . ., seeking a conviction carrying a maximum possible sentence of ten years' imprisonment." 288 Md. at 724. The Court elaborated:

"Under these circumstances, it is unfair to permit the State to exact a more severe and unanticipated penalty than that which could have been imposed if the prosecution had been wholly successful.

Accordingly, we hold that when a defendant is *charged* with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial, and when the defendant is convicted only of the lesser included charge, he may not receive a sentence for that conviction which exceeds the maximum sentence which could have been imposed had he been convicted of the greater charge." *Id.* (Emphasis supplied.)

The *Simms* Court then had to come to grips with the anomalous circumstances where one of the two charges has more required elements but the other carries a more severe penalty. Which is then the greater and which is the lesser? The Court held unequivocally that required elements and not the possible sentence was the criterion for determining "greater" versus "lesser." *And see Johnson v. State,* 283 Md. 196, 388 A.2d 926 (1978). The "required elements" test is reasonably simple to administer when comparing a greater inclusive offense with a lesser included offense (such as comparing assault with intent to murder to simple assault). A far more perplexing problem is that of comparing two closely related crimes which possess the same number of required elements, but where one is more specific and the other is general. *Johnson v. State, supra,* was a case comparing false pretenses and welfare fraud. Each crime involved the same elements, except that false pretenses required the victim to part with something of value generally, whereas welfare fraud required the victim to part with welfare services specifically. *Flannigan v. State,* 232 Md. 13, 191 A.2d 591 (1963), compared false pretenses with passing a bad check. Each required a false representation, but in the latter case, that false representation had to be a bad check specifically. In *Slye v. State,* 42 Md.App. 520, 401 A.2d 195 (1979), this Court compared larceny generally with shoplifting specifically. In *Henry v. State,* 273 Md. 131, 328 A.2d 293 (1974), the Court of Appeals compared larceny generally with automobile larceny. Leaving to philosophers

the semantic subtleties of whether a specific versus an alternative general element is, indeed, an additional element, it is enough to observe that the results are the same. All of these cases held that the more specific crime will control the more general crime for purposes of determining which merges into the other. The more specific crime, therefore, determines the upper limit on punishment when there is a merger and even in a non-merger situation, as in *Simms,* where jeopardy attaches on both the general and the specific crimes.

The appellant argues that the *Simms* situation is upon us in this case. Among the many charges upon which the appellant went to trial was assault with intent to rape, with a fifteen-year maximum penalty. That charge was dropped from the case as part of the State's logistical housecleaning in preparing a trimmed-down package to go to the jury. Notwithstanding the absence of anything remotely resembling an acquittal on the merits (as in *Simms*), the appellant maintains that the very appearance of the aggravated assault charge in the case served, under *Simms,* to establish an upper limit upon the penalty available for the attempted rape. If what were before us was attempted rape generally, we would be hard-pressed not to agree with the appellant. Although it is easy to imagine an attempted rape not involving an assault, *Gray v. State, supra,* at 43 Md.App. 244 n. 7, it is difficult to imagine an assault with intent to rape that would not, *ipso facto,* constitute an attempted rape. The intent element already being present, the act of assault would certainly qualify, under attempt law, as the "act in furtherance of that intent going beyond mere preparation." *Gray v. State, supra,* at 43 Md.App. 239. The assault is not truly an additional element; it is rather a specific instance of the overt act as an alternative to some other non-assaultive overt act. Under the "specific-general" relationship emanating from the *Johnson-Flannigan-Slye-Henry* line of cases, however, assault with intent to rape would seem to qualify as a specific form of the more general crime of attempted rape.

Unfortunately for the appellant, however, the variety of the common law crime for which he was convicted here was *attempted rape in the first degree.* An attempt, of course, is a single common law misdemeanor, but it is protean in its possible forms, taking on mental elements and possible punishments from the crimes attempted. The situation here is thus significantly different from *Gray v. State, supra,* and *Christensen v. State, supra,* where the attempts were to commit rape in the second degree. Even absent any aggravated assault charge, the upper limit of punishment in those two cases was controlled by the maximum penalty for rape in the second degree (20 years). Here the State set out to prove and did prove the aggravating elements necessary to raise this attempted crime to the first degree. *Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977), made it very clear that when dealing with monolithic crimes such as murder or rape, where the different degrees thereof are not separate crimes but serve simply to establish levels of blameworthiness for punishment purposes, the elements of proof needed to raise a crime from one punishment level or degree to another are "required elements" within the contemplation of double jeopardy and merger law. *Newton v. State, supra,* at 280 Md. 268-269.

In terms of the intent element here, the State had to prove and did prove that the appellant not only intended to rape his victim but that he intended to do so at knifepoint. That is one of the required aggravating elements, no one of which is necessary to prove assault with intent to rape. The intended rape for the statutory assault need only be a generalized rape in the second degree with none of the special violence that makes for rape in the first degree. The two crimes here were not "the same offense," and the assault to rape count, therefore, had no limiting effect upon the penalty for attempted first-degree rape. The sentence of life imprisonment stands undisturbed.

### B. *Twenty Years for Common Law Assault*

The appellant's consecutive sentence of twenty years imprisonment for common law assault raises similar prob-

lems but in a posture significantly distinguished to yield some dissimilar answers. Again, we are dealing with the open-ended penalty provisions of the common law — anything in the discretion of the sentencing judge which is not cruel and unusual.[9] Again, the appellant fires off a double-barrelled challenge — under the two constitutions and under the Maryland common law.

## 1. The Constitutional Question

The twenty-year sentence for common law assault survives the constitutional challenges for the same reasons that the life sentence for attempted rape survived them. In the first place, there was nothing barbarous about the mode of punishment — only the normal incidents of prison life. As to excessiveness (proportionality), that can never be litigated in the abstract but must be assessed on a case-by-case basis. That an extremely lengthy prison sentence might be disproportionately excessive for most common law assault convictions does not establish, as a bright-line formula, that it would be disproportionately excessive for all common law assault convictions. We measure proportionality not by comparing the sentence with the label of the crime (that the sentence be within legal limits is a legal problem, not a constitutional problem) but by comparing the sentence with the behavior of the criminal and the consequences of his act. As an abstract proposition, no term of years for common law assault is *per se* and universally unconstitutional.

---

**9.** The Supreme Court has recognized that the adjective "unusual" adds nothing of constitutional significance to the adjective "cruel," which says it all, standing alone. "The use of the word 'unusual' in the final draft [of the English Bill of Rights of 1689] appears to be inadvertent." Furman v. Georgia, 408 U.S. 238, 318, 92 S.Ct. 2726, 33 L.Ed.2d 346, 395 (1972) (concurring opinion by Marshall, J.). Were it otherwise, an imaginative and ameliorative sentencing reform, when first employed, might be struck down as unconstitutionally unusual. Were it otherwise, an unusually lenient sentence might be attacked by the State, State ex rel. Sonner v. Shearin, 272 Md. 502, 325 A.2d 573 (1974), as sufficiently unusual to be unconstitutional. Either a barbarous mode of inflicting punishment or a sentence disproportionately excessive in length is enough to taint the punishment as "cruel," and no resort need be had to its uselessly redundant companion, "unusual."

With respect to a twenty-year term for common law assault, we are supported many times over by the case law. The general principle was well stated by Chief Judge Marbury in *Apple v. State,* 190 Md. 661, 668, 59 A.2d 509 (1948):

> "[T]he offense [common law assault] is one pre-·scribed by the common law, and *there is no limit imposed on the court.* . . . The mere fact that in other cases, dissimilar on their facts, different sentences were imposed, is no ground for the conclusion that in the case before us, the sentence was excessive. *Each case must be judged upon its own merits.* 'Undue leniency in one case does not transform reasonable punishment in another case to a cruel one.' *Howard v. Fleming,* 191 U.S. 126, 24 S.Ct. 49, 50, 48 L.Ed. 121, at page 124." (Emphasis supplied.)

Judge Henderson wrote to the same effect for the Court of Appeals in *Heath v. State,* 198 Md. 455, 85 A.2d 43 (1951), saying initially at 198 Md. 459, "The third count [assault], based on a common law offense, carried no prescribed maximum penalty," and then more fully, at 198 Md. 467:

> "In this State there is no statutory limitation upon the amount of punishment in cases of assault and battery, and there was no limitation at common law. . . . In 2 Bishop, *Criminal Law* (9th ed.) p. 32, it is said: 'Still, from early times, when misdemeanors were punished by whatever fine or imprisonment the judge might deem it right to impose, it has been the judicial habit to look upon assaults as more or less aggravated by such attendant facts as appealed to the discretion for a heavy penalty. . . . An assault is deemed to be more or less enormous according to the facts of the particular case.' "

*And see Duff v. State,* 229 Md. 126, 182 A.2d 349 (1962); *Burley v. State,* 226 Md. 94, 96-97, 172 A.2d 394 (1961); *Hobbs v. Warden,* 223 Md. 651, 653, 163 A.2d 331 (1960); and *Jett v. Superintendent,* 209 Md. 633, 640, 120 A.2d 580 (1956).

On many occasions in Maryland, both the Court of Appeals and this Court have sustained twenty-year sentences for common law assault against both constitutional and legal attacks. *Adair v. State,* 231 Md. 255, 189 A.2d 618 (1963); *Roberts v. Warden,* 242 Md. 459, 219 A.2d 254 (1966); [10] *Brown v. State,* 38 Md.App. 192, 379 A.2d 1231 (1977); *Raley v. State,* 32 Md.App. 515, 527-528, 363 A.2d 261 (1976); and *Wilkins v. State,* 5 Md.App. 8, 22, 245 A.2d 80 (1968). Indeed, none of these cases has remotely suggested that the twenty-year figure is an absolute upper limit; their spirit, rather, denies the very efficacy of absolutes as a substitute for *ad hoc,* case-by-case analysis.

With respect to the constitutional challenge to the length of the sentence (deferring for the moment the very different issue of merger), we proceed to measure the proportionality of twenty years against the unique facts of this case. For precisely the reasons already discussed in sustaining the proportionality of life imprisonment for the attempted rape conviction, the violent and aggravated nature of the assault renders the sentence of twenty years not unconstitutionally disproportionate (again, deferring for the moment consideration of the very different issues of merger and multiple punishment). The twenty-year sentence, *in terms of its length,* is not, therefore, so disproportionately excessive as to be unconstitutional under either the State or Federal Constitutions.

## 2. The Sub-Constitutional Question

There remains to be resolved the question of whether a sentence of imprisonment for twenty years for common law assault is permitted under the statutory and the common

---

**10.** The Fourth Circuit Court of Appeals, to be sure, reached a contrary result in this case in Roberts v. Collins, 544 F.2d 168 (1976), but as Judge Wilner forcefully pointed out in Turner v. State, *supra,* at 45 Md.App. 172, we follow the Court of Appeals, not the Fourth Circuit: "That decision [Roberts v. Warden, 242 Md. 459], has never been overruled by the Court of Appeals, or by the Supreme Court; and it therefore remains binding on this Court, to the exclusion of the contrary Federal decisions." Indeed, the Fourth Circuit opinion betrayed a parochially naive lack of appreciation of venerable common law sentencing practices.

law of Maryland. This also is a double-barrelled issue: (a) Has a statutory "cap" been implicitly imposed on sentences for common law assault by the legislative promulgation of various aggravated assaults which do have legislatively imposed maximum penalties?; and (b) Even if not, is the twenty-year sentence forbidden, under *Simms v. State, supra,* in the procedural posture of this particular case?

### a. The Twenty-Year Assault Sentence in the Abstract

The appellant's argument based upon implicit legislation is unsound both in law and in logic. Its thesis is that by designating certain aggravated assaults as felonies [11] and by establishing maximum penalties for them, the Legislature preempted the field of more serious assaults and thereby relegated residual common law assault to the less serious instances. It follows, according to this thesis, that the penalty for the residual misdemeanor of common law assault may never exceed (if, indeed, it may equal) the legislatively imposed maximum for a more serious felonious assault.

The first and general answer to the argument based upon logical implication is that in Maryland we have historically and consistently disfavored the repeal of the common law by implication. Maryland Declaration of Rights, Article 5; *Hooper v. Baltimore,* 12 Md. 464, 475 (1859); *Lutz v. State,* 167 Md. 12, 172 A. 354 (1934); *Gray v. State, supra,* at 43 Md.App. 241-243; *Watkins v. State,* 42 Md.App. 349, 400 A.2d 464 (1979); and *State v. Gibson,* 4 Md.App. 236, 247, 242 A.2d 575 (1968), *aff'd.* 254 Md. 399, 254 A.2d 691 (1969).

The appellant's thesis also ignores the reality that the statutory assaults have not preempted the field of all serious and aggravated assaults. Our Legislature has cut out of the herd for special treatment four assaults where the aggravating factor is a special *mens rea* or specific intent. This by no means exhausts the category of more grievous and

---

11. Md. Code Ann. Art. 27, § 12 (1982 Repl. Vol.) prohibits assault with intent to rob (ten-year maximum); assault with intent to murder (thirty-year maximum); and assault with intent to commit either a rape or a sexual offense (in either the first or second degree) (fifteen-year maximum). Art. 27, § 386 prohibits assault with intent to maim or disfigure (ten-year maximum).

blameworthy assaults. The aggravating factor in a particular case might well be the modality of an assault, and not its *mens rea* — assault with a deadly weapon, assault by poison (this modality alone makes first-degree murder out of ordinary murder), assault by bomb. Many states have made assault with a deadly weapon a special crime. Maryland has not done so, but has trusted the wide discretion of the common law sentencing provisions to deal appropriately with such severely aggravated assaults. The aggravating factor might well be the harmful consequences of a particular assault and not its *mens rea*. Even where drugs or alcohol have diminished the capacity of a mind to form a specific intent or where there simply has been no specific intent, a brutal beating that leaves its victim blinded, crippled, disfigured, in a wheelchair for life, in a psychiatric ward for life, is severely aggravated. Once again, Maryland has not dealt with this form of aggravation legislatively but has left it to the discretion of common law sentencing. We sometimes overlook this reality because of the linguistic power of inadvertent phrasing. Whenever we say "simple assault" when what we mean is "common law assault," we subconsciously convey a sense of triviality where that is far from the necessary case. A common law assault is theoretically capable of being as aggravated as or more aggravated than any of our statutory assaults.

So much for the unsoundness of the appellant's thesis in logic. We turn to its unsoundness in law. In *Gleaton v. State,* 235 Md. 271, 277-278, 201 A.2d 353 (1964), Judge Horney deliberately chose to address the issue now before us:

> "There is, however, in this State no statutory limitation on the penalty which may be imposed for simple assault, and there was none at common law. *Heath v. State,* 198 Md. 455, 467, 85 A.2d 43 (1951); *Apple v. State,* 190 Md. 661, 668, 59 A.2d 509 (1948). Nor do we construe the penal limits imposable for the statutory assaults as implying a legislative policy to confine sentences for common law assault to not more than those prescribed for

the statutory assaults. Statutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced. *Dwarris on Statutes,* 695. The matter of imposing sentences is left to the sound discretion of the trial court, and the only restraint on its power to fix a penalty is the constitutional prohibitions against cruel and unusual penalties and punishment found in Articles 16 and 25 of the Maryland Declaration of Rights."

In a square holding to this effect in *Roberts v. Warden,* 242 Md. 459, 460-461, 219 A.2d 254 (1966), the Court of Appeals quoted with approval this deliberate and well-considered dicta from *Gleaton.* By way of equally well-considered dicta, the sound analysis of Judge Eldridge in *Simms v. State, supra,* reaffirmed the *Gleaton-Roberts* position, at 288 Md. 725-726:

"Second, some of the cases from other jurisdictions seem to hold that any law or laws which authorize a punishment for a lesser included offense which is more severe than the maximum authorized for a greater offense are unconstitutional. In other words, even when the greater offense is not charged, it is held that the punishment for the lesser can never exceed the maximum prescribed for the greater. Otherwise, in the view of these courts, the sentence is not proportioned to the nature of the offense and thus violates the Eighth Amendment under the doctrine of *Weems v. United States....* This Court rejected such a broad constitutional position in *Roberts v. Warden, supra,* 242 Md. at 460-461, and *Gleaton v. State, supra,* 235 Md. at 277, and we adhere to the views expressed in *Roberts* and *Gleaton.*" (Citations omitted.)

Judge Eldridge, in *Simms,* pointed out very explicitly how the State might sometimes, because of the unusually brutal nature of an assault, choose to forego prosecution under a statutory aggravated assault (even when it might be clearly appropriate) and to proceed instead exclusively on a charge of common law assault for the deliberate and appropriate purpose of keeping the sentencing options open-ended:

> "[B]asic crimes such as simple assault ... can embrace an almost infinite variety of fact patterns. Some 'simple assaults' may involve more brutal or heinous conduct than may be present in other cases falling within one of the statutory aggravated assaults. Moreover, these two situations could be combined, *e.g.,* where there is an assault with intent to rob accompanied by extremely brutal conduct. Where this occurs, and where the State decides to prosecute just for basic assault because of the brutal nature of the conduct, a sentence exceeding the statutory maximum for assault with intent to rob is not 'grossly out of proportion to the severity of the crime.' In our view, these considerations are entirely overlooked by the cases in other jurisdictions which hold that the maximum penalty for a lesser included offense can never exceed the maximum for a greater, regardless of the facts or the charges made in a particular case." *Id.* at 726-727.

Thus, a sentence of twenty years for common law assault is not, *per se,* illegal under Maryland law any more than it is unconstitutional.

### b. The Twenty-Year Assault Sentence in the Procedural Posture of the Case

In this case, however, the State, wisely or foolishly, chose to charge the appellant not only with common law assault but also with the statutory crime of assault with intent to rape, with its fifteen-year maximum sentence. It brought the appellant to trial on both charges and only dropped the

assault with intent to rape count as the case was being "tidied up" for submission to the jury. Common law assault is indisputably a lesser included offense within the greater inclusive offense of assault with intent to rape. Under the circumstances, it is clear that, under the rule of the *Simms* case, the subjection of the appellant to jeopardy for the statutory assault operated to impose its fifteen-year maximum sentence as a "cap" upon the common law sentence for common law assault. We would, therefore, vacate the sentence and remand it for a reduction from twenty years to fifteen years, but for the merger considerations that follow.

### c. The Merger of the Assault Conviction into the Attempted Rape Conviction

The appellant urges that the common law assault conviction (with its now reduced penalty of fifteen years) merges into the attempted first-degree rape conviction with its sentence of life imprisonment. Under the constitutional microscope of double jeopardy law, this is not so. Attempted rape (even without the aggravating first-degree elements) requires an intent to commit rape; common law assault does not. Common law assault, on the other hand, requires an assaultive act toward the victim; attempted rape does not. Each crime has a required element which the other does not. They are clearly not "the same offense." *Newton v. State, supra; Morey v. Commonwealth,* 108 Mass. 433 (1871); *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The double jeopardy clause does not protect against multiple punishment for different offenses but only against multiple punishment for "the same offense." That is not the situation at bar.

That does not, however, end the inquiry. We are here dealing with a single act, even though the single act may have constituted two separate crimes. The assault itself was the overt act of the attempted rape. This is a non-constitutional problem that "sounds in" double jeop-

ardy. As *Brooks v. State,* 284 Md. 416, 423, 397 A.2d 596 (1979), pointed out:

"[E]ven though offenses may be separate and distinct under the required evidence test, courts occasionally find as a matter of statutory interpretation that the Legislature did not intend, under the circumstances involved, that a person could be convicted of two separate offenses growing out of the same act or transaction."

It is purely a question of reading legislative intent. If the Legislature intended two crimes arising out of a single act to be punished separately, we defer to that legislated choice. *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Bremer v. State,* 18 Md.App. 291, 343-345, 307 A.2d 503 (1973). If the Legislature intended but a single punishment, we defer to that legislated choice. If we are uncertain as to what the Legislature intended, we turn to the so-called "Rule of Lenity," by which we give the defendant the benefit of the doubt. *Simpson v. United States,* 435 U.S. 6, 13-16, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *United States v. Gaddis,* 424 U.S. 544, 547-548, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976); *Ladner v. United States,* 358 U.S. 169, 173-178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *Prince v. United States,* 352 U.S. 322, 327, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); *Bell v. United States,* 349 U.S. 81, 83-84, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

We are aware of no indications that the Legislature intended an assault which is also the overt act of an attempt to be punished separately from that attempt. Under the circumstances, we hold that the conviction for common law assault merged into the conviction for attempted first-degree rape.

In an effort to forestall this result, the State strains to have us treat the common law assault as an attack separate and distinct from the attack that was initiated and continued for purposes of accomplishing the rape. It maintains that the initial threat at knifepoint was all that was necessary

to constitute either (1) the overt act of the attempted rape or (2) the assault with intent to rape; and that the subsequent beating (producing the broken nose and the broken jaw) was gratuitously extra and thereby constituted a separate and additional assault. The argument collapses of its own weight. Because an assault turns out to be more vicious and more protracted than would be minimally necessary to constitute the crime does not operate to subdivide it thereby into two (or even three or four) separate assaults. Assault may range along its spectrum from the least significant to the most aggravated of attacks. This is the reason that the common law penalty is open-ended — to make available the trivial fine or the suspended sentence on appropriately minimal occasions; to make available lengthy penitentiary sentences (with no statutory limitation) on the more aggravated occasions. Though ranging from one end of the spectrum to the other, there is still the single crime of assault.

If, as the State maintains, the sentence was for a "second assault," we are constrained to ask whatever happened to the "first assault?" If the verbal order to disrobe at knifepoint was the first assault, and the breaking of the jaw a second and distinct assault, why were not two assault counts placed in this indictment? Does the State maintain that the appellant could have been sentenced separately and consecutively for two separate assault convictions under a single count? If for some reason a defense of intoxication had negated the specific intent necessary for either assault with intent to rape, or attempted rape, was the State bereft of any lesser count upon which to convict for the verbal threat at knifepoint? The answer to these questions is obviously, "No," and is, therefore, dispositive of the State's attempt to find two separate assaults within the confines of the charges in this case. There was a single, albeit lengthy and vicious, attack. The common law assault was part of the attempted rape and should have been merged into it.

C. *Three Years for Carrying a Deadly Weapon*

The appellant received a three-year consecutive sentence for carrying a deadly weapon openly with intent to injure

another person. He now claims that this conviction should have merged into the attempted first-degree rape conviction. The problem is, once again, double-barrelled — there is a constitutional question and there is the question of statutory interpretation.

As to the constitutional issue, we have no trouble in concluding that the two offenses are not "the same offense." In dealing with the closely analogous problem of (1) carrying a deadly weapon *vis-a-vis* (2) assault with intent to murder, the Court of Appeals in *Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979), had no difficulty in concluding that the two offenses were not the same and, therefore, did not merge. In looking at the required elements of the respective offenses, it is clear, that carrying a deadly weapon requires no intent to rape; *attempted* first-degree rape simply requires that this element be intended, not consummated. The carrying of a deadly weapon charge, on the other hand, requires that the act be done, not merely intended. The consummated act no more merges into the intended act than consummated larceny merges into a breaking and entering perpetrated with the intent to commit larceny. *Williams v. State,* 205 Md. 470, 109 A.2d 89 (1954).

Even if we were dealing with consummated first-degree rape, the appellant's argument would not prevail. Here, not one but two aggravating circumstances were present (and, therefore, presumably intended), either one of which could have raised ordinary rape to rape in the first degree. The two pertinent aggravating factors, which are the first two of the four such factors spelled out in Art. 27, § 462 (a), are:

"(1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person. . . ."

We have no doubt that the broken nose and broken jaw involve "serious physical injury" within the contemplation of Subsection (2). When two aggravating elements are present, either one of which could raise the second degree of a crime to the first degree, the "required elements" test does not treat either one of them as required. *Newton v. State, supra,* pointed out that where a dual predicate for aggravation is sufficiently present, an underlying felony will not merge into a first-degree murder conviction. "If, on the other hand, the murder conviction is premised upon independent proof of wilfulness, premeditation and deliberation under § 407, or if the evidence is sufficient for a jury to find those elements, the offenses would not merge." 280 Md. at 269. So much for the constitutional question.

We turn to the question of legislative construction. Art. 27, § 36 (a) provides, *inter alia:*

> ". . . and in case of conviction, if it shall appear from the evidence that such weapon was carried, concealed or openly, with the deliberate purpose of injuring the person . . . of another, the court shall impose the highest sentence of imprisonment prescribed."

We discern from wording such as this a legislative intent to deal harshly with those who violate this section. Cf. *Brooks v. State, supra.* By analogy to the handgun sections, we find further support for the proposition that legislative policy is a "get tough policy" when it comes to the promiscuous use of weapons. *Couplin v. State,* 37 Md.App. 567, 378 A.2d 197 (1977); *Raley v. State,* 32 Md.App. 515, 363 A.2d 261 (1976). The sentence for carrying a deadly weapon will not be disturbed.

\* \* \*

In net effect, life plus forty-three years is reduced to life plus twenty-three years.

*Convictions and sentences for attempted rape, burglary and carrying a deadly weapon affirmed; sentence for common law assault vacated and conviction merged into conviction for attempted rape; costs to be paid by appellant.*